GLEN J. LERNER, ESQ.
Nevada Bar No.: 4314
**GLEN J. LERNER & ASSOCIATES**
4795 S Durango Drive
Las Vegas, NV 89147
Telephone: (702) 877-1500
Facsimile: (702) 877-0110
E-Mail: glerner@glenlerner.com


JONATHAN B. ANDRY (LSBA NO.20081)
KEA SHERMAN (LSBA NO. 30299)
**THE ANDRY LAW FIRM**
610 Baronne Street
New Orleans, LA 70113
Telephone: (504) 586-8899
Facsimile: (504) 586-8911
E-mail: johnandry@yahoo.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| SANDRA PREZGAY, Individually and On Behalf of All Similarly Situated Individuals,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>COX COMMUNICATIONS, COX COMMUNICATIONS LAS VEGAS, INC., d/b/a COX COMMUNICATIONS, COX NEVADA TELECOM, LLC, COX COMMUNICATIONS, INC., COX ENTERPRISES, INC., COXCOM, INC., d/b/a COX COMMUNICATIONS ARIZONA, COX COMMUNICATIONS HOLDINGS, INC., and COX COMMUNICATIONS EBD HOLDINGS INC.<br>　　　　　　　　　Defendants | CASE NO.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

- 1 -

## **CLASS ACTION COMPLAINT**

NOW COMES Plaintiff, Sandra Prezgay, individually and as representative of all similarly situated individuals, and brings this Class Action Complaint against Defendants, Cox Communications, Cox Communications Las Vegas, Inc., d/b/a Cox Communications, Cox Nevada Telcom, LLC, Cox Communications, Inc., Cox Enterprises, Inc., CoxCom, Inc., d/b/a Cox Communications Arizona, Cox Communications Holdings, Inc., and Cox Communications EBD Holdings, Inc., (hereinafter collectively referred to as "Cox"), and submits and alleges the following:

## INTRODUCTION

1. Plaintiff brings this class action on behalf of all persons who purchase premium cable services (hereinafter the "Class") from Defendant, Cox. Cox uses an unlawful tying arrangement between its premium cable services and "cable boxes" to force its customers, including Plaintiff and the Class, to pay a monthly rental fee for the cable boxes in addition to the fee that customers already pay for the premium services.

2. Cox's actions constitute an unlawful tying agreement which impermissibly restrains trade in the United States and, therefore, violates 15 U.S.C. §§ 1 and 2.

## PARTIES

3. Plaintiff, Sandra Prezgay, is a citizen of the State of Nevada and resides in Las Vegas, Nevada, in the County of Clark.

4. At all times material hereto, Sandra Prezgay has been a subscriber to premium cable services from Cox.

5. Plaintiff, Sandra Prezgay, brings this action on his own behalf and on behalf of all of the similarly situated persons who are defined to be the following:

All persons in the United States who subscribe or have subscribed to Cox for premium cable television services and pay or have paid an additional monthly fee for the accompanying cable

box.

6. Excluded from the Class are Cox; officers, directors, board members, or employees of Cox; any entity in which Cox has a controlling interest; affiliates, legal representatives, attorneys, heirs or assigns of Cox; any federal, state or local government entity; and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staffs. Plaintiff reserves the right to modify or amend this Class definition if discovery and/or further investigation reveal the necessity to do so.

7. Defendant, Cox Communications, is owned by defendant, Cox Communications Las Vegas, Inc., a Delaware corporation with its principal place of business located at 1400 Lake Hearn Drive, Atlanta, Georgia 30319.

8. Defendant, Cox Communications Las Vegas, Inc., is a Delaware corporation with its principal place of business located at 1400 Lake Hearn Drive, Atlanta, Georgia 30319.

9. Defendant, Cox Nevada Telcom, LLC, is a Delaware limited liability company, whose managing member is Cox Communications Las Vegas, Inc., 1400 Lake Hearn Drive, Atlanta, Georgia 30319.

10. Defendant, Cox Communications Holdings, Inc., is a Delaware corporation with its principal place of business located at 1400 Lake Hearn Drive, Atlanta, Georgia 30319.

11. Defendant, Cox Communications EBD Holdings, Inc., is a Delaware corporation with its principal place of business located at 1400 Lake Hearn Drive, Atlanta, Georgia 30319.

12. Defendant, Cox Communications Arizona, is owned by defendant, CoxCom, Inc., a Delaware corporation with its principal place of business located at 6205 Peachtree Dunwoody Road, Atlanta, Georgia 30328.

13. Defendant, Cox Communications, Inc. is a Delaware corporation with its principal place of business located at 1400 Lake Hearn Drive, Atlanta, Georgia 30319.

14. Defendant, CoxCom, Inc., d/b/a Cox Communications Arizona, is a Delaware corporation with its principal place of business located at 6205 Peachtree Dunwoody Road, Atlanta, Georgia 30328.

15. Defendant, Cox Enterprises, Inc., is a privately owned Delaware corporation with its principal place of business located at 6205 Peachtree Dunwoody Road, Atlanta, Georgia 30328.

16. At all times relevant hereto, each of the Defendants acted as the agent of each of the other Defendants.

## JURISDICTION AND VENUE

17. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 in that Plaintiff, on his own behalf and on behalf of the Class, asserts claims under 15 U.S.C. §§ 1 and 2.

18. Venue is proper in the District of Nevada pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 22.

## BACKGROUND

19. Cox Communications, Inc. is the third largest provider of cable TV services in the United States. It boasts nearly 6 million customers, 8.3 billion dollars in revenue, and 22,899 employees.

20. Cox Enterprises, Inc. is a leading communications, media and automotive services company. In its 2007 Annual Report, it posted consolidated revenues (including its subsidiaries) of 15 billion dollars.

21. Cox Communications, Inc. is a wholly owned subsidiary of Cox Enterprises, Inc. that manages the sale of cable TV services.

22. Cox offers cable services to customers for a monthly fee based on the type of services provided.

23. Plaintiff and the members of the Class purchased additional premium services from Cox including, but not limited to, high definition ("HD") television services, digital cable services, On-Demand services, digital video recorder ("DVR") services, and premium movie channels such as HBO, Showtime and Cinemax.

24. In exchange for the "premium" services, Cox customers, including Plaintiff and members of the Class, pay a higher monthly fee than Cox customers who only purchase standard cable services.

25. In addition to the higher fee charged by Cox for "premium" services, Cox also charges purchasers of "premium" services for what Cox terms "Digital service/Digital Gateway" and also for what Cox terms a "Digital Converter" or in the case of HD service, "Digital Converter HD." These charges amount to "rental" fees associated with the cable boxes and/or converter boxes that filter the signal from the TV cable to the television set.

26. Cox forces Plaintiff and members of the Class to rent the boxes instead of offering the option to buy them or allowing Plaintiff and members of the Class to purchase the boxes directly from another source (i.e. directly from the manufacturer) even though the boxes perform the same function when bought on the open market. Consequently, Cox unlawfully ties its premium cable services to the cable boxes which forces Plaintiff and the members of the Class to rent the cable boxes instead of purchasing them, even though the amount paid in rental fees in less than a year's time would easily cover the cost of purchasing the boxes outright.

27. Although cable boxes are manufactured by many different companies, Motorola and Scientific Atlanta dominate the market and sell their cable boxes to various cable companies including Cox. If not for the tying of the premium cable services to the cable box, Plaintiff and members

of the Class would have the option of purchasing or renting a cable box from the manufacturer or vendor of their choice in coordination with the services purchased from Cox.

28. The choice to use other cable boxes is not available to Plaintiff or members of the Class because of Cox's tying the premium cable services to rental of the cable boxes. In addition, Cox refuses to sell the cable boxes to its customers thereby forcing customers to pay monthly rental fees which, within a number of months, exceed the value of the cable box. Thus, by tying the premium services to the cable box, Cox forces Plaintiff and members of the Class to pay a significantly higher sum for cable television than would be required if the two products remained distinct.

29. Plaintiff believes that Cox purchases the cable boxes from manufacturers such as Motorola and Scientific Atlanta, at a fixed and relatively low cost only to turn around and rent those boxes to members of the Class, with full knowledge that the members of the Class, because of Cox's improper conduct, have no choice but to pay the rental fees charged by Cox.

30. Plaintiff believes that the cable box market involves a significant amount of interstate commerce.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this class action on behalf of all similarly situated persons, pursuant to Federal Rule of Civil Procedure 23(b)(1,2 and 3).

32. The proposed Plaintiff Class is defined as follows:

   All persons in the United States who subscribe or have subscribed to Cox for premium cable television services and pay or have paid an additional monthly fee for the accompanying cable box and/or converter box.

33. **NUMEROSITY:** Members of the Class are so numerous that their joinder would be impracticable. The Class includes millions of individual customers of Cox. The precise number

of Class members and their identities are unknown to Plaintiff but are well known to Cox and can easily be determined through discovery. Judicial economy favors a class action mechanism instead of forcing each class member to bring a separate action individually. The relatively small amount of individual damages of each class member makes it economically infeasible for each Class member to bring a separate action.

34. **COMMONALITY:** Common questions of law and fact predominate over any individual questions of separate Class members. The common questions of law and fact include, but are not limited to, the following:

   a. Whether Cox violated United States antitrust law;

   b. Whether Cox's charging of rental fees for cable boxes in addition to the charging of premium cable services fees constitutes an unlawful tying arrangement;

   c. Whether Cox's actions have caused damages to Plaintiff and members of the Class;

   d. Whether Cox should be enjoined from further violations of federal antitrust laws; and

   e. Whether Cox is liable to Plaintiff and members of the Class for treble damages as a result of its violation of federal antitrust laws.

35. **TYPICALITY:** Plaintiff's claims are typical of the claims of the Class members. Plaintiff and all Class members have been injured by the same wrongful practices engaged in by Cox. Plaintiff's claims arise from the same practices and course of conduct that gives rise to the claims of the Class members and are based on the same legal theories.

36. **ADEQUACY:** Plaintiff will fully and adequately assert and protect the interests of the Class. Plaintiff has retained counsel who is experienced in class actions and complex mass tort litigation. Neither Plaintiff nor his counsel have interests contrary to or conflicting with the interests of the Class.

37. **SUPERIORITY**: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims by each of the Class members is economically unfeasible and impractical. While the aggregate amount of the damages suffered by the Class is in the millions of dollars, the individual damages suffered by each of the Class members as a result of the wrongful conduct by Cox are too small to warrant the expense of individual lawsuits. Even if the individual damages were sufficient to warrant individual lawsuits, the court system would be unreasonably burdened by the number of cases that would be filed.

38. Plaintiff does not anticipate any difficulties in the management of this litigation.

COUNT I
VIOLATION OF THE SHERMAN ANTITRUST ACT
UNLAWFUL TYING

39. Plaintiff incorporates each of the preceding paragraphs as is fully set forth herein at length.

40. The Sherman Antitrust Act makes it unlawful to enter into a contract in restraint of trade or commerce. 15 U.S.C. § 1. Congress has granted a private right of action to individuals harmed by violations of this Act. 15 U.S.C. § 15.

41. Plaintiff, on his own behalf and on behalf of the Class, seeks to recover damages suffered as a result of Cox's violation of the Sherman Antitrust Act.

42. Cox improperly ties its premium cable services with the required rental of a cable box. Specifically, Cox contracted with Plaintiff and all Class members to provide premium cable services but only on the condition that Plaintiff and all Class members also pay a monthly rental fee to Cox for a cable box necessary to view and use the premium services.

43. No member of the Class, including Plaintiff, can unbundle or untie the two products, i.e., premium cable services and a cable box.

44. As a result, Plaintiff and all Class members are forced to pay rental fees for the cable box in addition to the increased fees they pay for premium cable services. Cox's conduct is even more egregious given that Cox is the third largest provider of cable services in the United States. In fact, in many areas of the country, it is believed that Cox is the sole provider of cable services.

45. At all times relevant hereto, Cox has maintained and exerted sufficient economic and market power to coerce Plaintiff and members of the Class to pay rent for the cable box and accept the tied products.

46. Cox's improper tying of the cable box to the premium cable service harms competition. Upon information and belief, the cable box market is dominated by two manufacturers, both of which sell products to Cox. Since Plaintiff and the Class members can only rent a cable box directly from Cox, there is little incentive for other manufacturers to enter the market, and those that do are precluded from renting or selling their products to Plaintiffs and members of the Class at lower, market-driven prices.

47. There is a market for cable boxes separate and apart from the Cox premium cable services; the two products are separate and distinct products. In fact, an individual can find cable boxes for sale on the open market today, but Cox refuses to permit a customer to use his own cable box when subscribing to Cox's premium services.

48. At all times relevant hereto, Cox has maintained sufficient power in the cable market to force Plaintiff and members of the Class to accept the rental agreement which they otherwise would not accept absent Cox's extraordinary economic and market power.

49. Cox's conduct has a substantial impact o interstate commerce in the market for cable boxes.

50. Cox's bundling and tying of premium cable services and the cable box is an unreasonable restraint of trade in violation of the Sherman Antitrust Act.

51. Cox's conduct has been, and continues to be, the direct cause of damage to the Plaintiff and members of the Class.

52. There is no lawful business justification for Cox's conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class, demands judgment in his favor and against Defendants as follows:

a. For an Order certifying the Class pursuant to Federal Rule of Civil Procedure 23 appointing Plaintiff as the representative of the Class, and appointing counsel for Plaintiff counsel for the Class;

b. For an Order that Cox violated the Sherman Antitrust Act, 15 U.S.C. § 1;

c. For an Order enjoining Cox from continuing the practice of tying premium cable services to the rental of a cable box from Cox;

d. For an award of all compensatory and other damages suffered by Plaintiff and members of the Class;

e. For an award of all statutory damages under the Sherman Antitrust Act;

f. For an award of all costs incurred by Plaintiff in pursuing this action;

g. For an award of reasonable attorneys' fees; and

h. For any other relief the Court deems reasonable.

/ / /

/ / /

/ / /

## JURY DEMAND

Plaintiff demands a trial by jury on all factual issues.

Dated: April 2, 2009.

        /s/ Glen J. Lerner, Esq.
        GLEN J. LERNER , ESQ.
        Nevada Bar No. 4314
        **GLEN J. LERNER & ASSOCIATES**
        4795 S Durango Drive
        Las Vegas, NV 89147
        Telephone**:**  (702) 877-1500
        Facsimile (702) 877-0110
        Email: glerner@glenlerner.com


        Jonathan B. Andry, Esq. (LSBA #: 20081)
        **THE ANDRY LAW FIRM, LLC**
        610 Baronne Street
        New Orleans, Louisiana 70113
        Telephone: (504) 586-8899
        Facsimile: (504)586-8933
        Email:  johnandry@yahoo.com